Opinion issued August 9, 2007


 










In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00697-CR






CARLOS LANDRIAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 998050





O P I N I O N


 A jury convicted appellant, Carlos Landrian, of aggravated assault and assessed
punishment at seven years' in prison with a recommendation for community
supervision. See Tex. Pen. Code Ann. § 22.02(a) (Vernon Supp. 2006). The trial
court suspended appellant's sentence and assessed punishment at seven years'
community supervision. We determine (1) whether the evidence was legally
sufficient to support the jury's guilty verdict, and (2) whether the trial court's
submission of two aggravated assault application paragraphs to the jury in the
disjunctive was harmful error because it allowed the jury to convict appellant with
less than a unanimous verdict. We reverse the judgment and remand the cause for a
new trial.

Facts


 On December 19, 2003, appellant was attending a company Christmas party
at the Camino Real Apartments' clubhouse. Luis Brizuela, complainant, went to the
party to pick up his cousin and to visit with people at the party. Complainant went
outside to the back of the clubhouse to answer his cell phone. 

 After complainant had answered his phone, he walked to the front of the
clubhouse, where he saw Luis Miguel lying on the ground, bleeding. Miguel and
appellant had been fighting. Appellant then threw a bottle, injuring complainant. A
piece of glass from the bottle lodged in complainant's eye. An ambulance arrived
about 10 minutes later and took complainant to the hospital. Complainant suffered
a severe laceration of the cornea and sclera and significant trauma of the retina and
other interior parts of the eye. Complainant's eye had to be removed. 

 The day after the incident, complainant contacted the police. Officer Bang Le
of the Houston Police Department met with complainant at his home to complete an
offense report. Complainant told Officer Le that appellant had attempted to hit
Miguel with the bottle, but had hit him instead. Appellant was eventually arrested for
aggravated assault.

 At trial, the State presented witnesses who testified that appellant threw a bottle
and injured complainant. However, the witnesses' testimony differed about how
appellant threw the bottle. Complainant testified that appellant had exited the front
door and had intentionally thrown an unbroken beer bottle directly at him, striking
him in the head and causing the glass to become lodged in his eye. Two Houston
Police officers testified that complainant's original complaint said appellant had hit
complainant with the bottle, but that appellant had attempted to throw the bottle at
Miguel. State's witness Hernan Martinez testified that appellant had exited the
clubhouse with a beer bottle, which he broke on the ground, and then had thrown a
shard of glass at complainant. After Martinez made this statement, the State showed
Martinez his original statement, in which he had said that appellant had thrown the
bottle at Miguel, but had hit complainant. Finally, State's witness Piedad Salazar
testified that appellant had smashed a bottle against a wall and had thrown the bottle
into the air, not aiming at anyone. Salazar stated that a piece of the broken bottle had
hit complainant. 

 Appellant and his witnesses testified that he had gone outside the party to help
clean up and that a group of men, including complainant and Miguel, were outside
the clubhouse, drinking. They testified that Miguel attacked appellant as appellant
had exited the building. Appellant hit Miguel in the head with a beer bottle in an
attempt to ward off a second attack by Miguel. The bottle exploded on Miguel's
head, and some glass hit complainant. Appellant testified that he never realized that
complainant had been injured by the broken glass.

Legal Sufficiency

 In his sixth issue, appellant argues, in part, that the evidence is legally
insufficient to support the conviction because (1) the State "did not provide any
evidence that appellant was not acting in self-defense"; (2) the State introduced "no
evidence" of transferred intent; and (3) the State offered "no evidence" that the bottle
could have caused death or serious bodily injury. (1) 

A. Standard of Review and the Law

 When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas
v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). We do not resolve any
conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses
because this is the function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim.
App. 1992); see also Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
Instead, our duty is to determine whether both the explicit and implicit findings of the
trier of fact are rational by viewing all the evidence admitted at trial in the light most
favorable to the verdict. See Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App.
2000); Adelman, 828 S.W.2d at 422. In so doing, we resolve any inconsistencies in
the evidence in favor of the verdict. See Matson, 819 S.W.2d at 843.

 A person commits aggravated assault if he either intentionally, knowingly, or
recklessly causes serious bodily injury to another or he intentionally, knowingly, or
recklessly causes bodily injury to another with the use of a deadly weapon. Tex. Pen.
Code Ann. § 22.02(a)(1)-(2).

B. Discussion

 1. Self-Defense

 Appellant first contends that "the jury could not have found beyond a
reasonable doubt that [appellant] was not acting in self-defense, which is a required
element of the State's case." Specifically, appellant argues that the State failed to
prove beyond a reasonable doubt that appellant was not acting in self-defense. 
However, the State has only the burden of persuasion when attempting to dispose of
appellant's self-defense claim. See Saxton v. State, 804 S.W.2d 910, 913-14 (Tex.
Crim. App. 1991) (explaining that State is not required to produce affirmative
evidence refuting self-defense). The burden of persuasion requires only that the State
prove beyond a reasonable doubt that appellant actually committed the offense of
aggravated assault. See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003). Because the trial court submitted the law of self-defense only as a defense to
the paragraph alleging intentional or knowing conduct, we construe appellant's
argument to be that the State failed to meet its burden because the State presented
legally insufficient evidence that appellant intentionally or knowingly caused bodily
harm with a deadly weapon, specifically, a bottle.

 The trial court's instruction on self-defense provided a defense if appellant hit
complainant with the bottle while defending himself against Luis Miguel. The State's
witnesses testified that appellant threw a bottle at Miguel, but hit complainant. 
State's witness Martinez's testimony also showed that appellant had already beaten
up Miguel and that Miguel was too drunk to fight back when appellant threw the
bottle that hit complainant. 

 The jury was entitled to believe any testimony presented. The jury could have
believed that the State's witnesses who testified that appellant was not acting in self-defense were more credible than appellant's own testimony and the testimony of his
witnesses that he was acting in self-defense. 

 2. Transferred Intent

 Appellant next asserts that the State presented no evidence proving that
appellant threw the bottle directly at complainant. Although the State did present
evidence that appellant threw the bottle directly at complainant, the theory of
transferred intent was raised by the evidence that appellant had thrown the bottle at
Miguel, but had hit complainant instead. Transferred intent "is raised when there is
evidence a defendant with the required culpable mental state intends to injure or harm
a specific person but injures or harms a different person . . . ." Manrique v. State, 994
S.W.2d 640, 647 (Tex. Crim. App. 1999); see Tex. Pen. Code Ann. § 6.04(b)(2)
(Vernon 2003) ("A person is nevertheless criminally responsible for causing a result
if the only difference between what actually occurred and what was desired,
contemplated, or risked is that a different person or property was injured, harmed, or
otherwise affected."). 

 The State did put on evidence that appellant attempted to hit Miguel with the
bottle. Hernan Martinez first stated that appellant had thrown the bottle directly at
complainant, then later stated that appellant had thrown the bottle at Miguel, but had
struck complainant instead. Appellant testified himself that he hit Miguel with the
bottle during a fight. The jury could have believed either that appellant had
intentionally hit Miguel or that he had thrown a bottle at him and that glass had hit
complainant in the eye. There was more than a scintilla of evidence to support either
theory. That is, there was legally sufficient evidence to prove appellant's guilt for
either a direct assault upon complainant or for an assault upon complainant through
the doctrine of transferred intent. 

 3. Deadly Weapon

 Appellant finally contends that the State failed to show "any evidence" that the
bottle was a deadly weapon. 

 A deadly weapon is anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury. Tex. Pen. Code Ann. §
1.07(a)(17)(B) (Vernon Supp. 2006). The State presented evidence that appellant
intentionally threw the bottle directly at complainant. Officer Le testified that a bottle
thrown or slashed at another could cause death or serious bodily injury. The evidence
further showed that complainant lost his right eye. Complainant's permanent loss of
his right eye constituted serious bodily injury. See Garza v. State, 695 S.W.2d 726,
729 (Tex. App.--Dallas 1985) (stating that loss of eye constitutes serious bodily
injury), aff'd on other grounds, 725 S.W.2d 256 (Tex. Crim. App. 1987); Tex. Pen.
Code Ann. § 1.07(a)(46) (Vernon Supp. 2006) ( "'Serious bodily injury' means . . .
protracted loss or impairment of the function of any bodily member or organ."). It is
in the jury's province to determine the credibility of the evidence. The jury could
have believed the witnesses' testimony that appellant used the bottle to cause serious
bodily injury to complainant.

C. Resolution

 We hold the evidence is legally sufficient to support the conviction, and we
thus reject appellant's challenges in regard to self-defense, transferred intent, and use
of a deadly weapon. We overrule the legal-sufficiency portion of appellant's sixth
issue.Unanimous Verdict

 In his first issue, appellant argues that he was denied the right to a unanimous
jury verdict because the charge allowed the jury to convict him of aggravated assault
without unanimously determining whether appellant (1) intentionally or knowingly
caused bodily injury with a deadly weapon or (2) recklessly caused serious bodily
injury.

A. Standard of Review and Law

 Texas requires unanimous verdicts in all felony cases. See Tex. Const. art. V,
§ 13; Stuhler v. State, 218 S.W.3d 706, 716 (Tex. Crim. App. 2007); Ngo v. State, 175
S.W.3d 738, 745 (Tex. Crim. App. 2005). Appellate review of jury-charge error
involves a two-step process. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App.
1994). Initially, we must determine whether error occurred. If so, we must then
evaluate whether sufficient harm resulted from the error to require reversal. Id. at
731-32. Error in the charge, if timely objected to in the trial court, requires reversal
if the error was "calculated to injure [the] rights of the defendant," which means no
more than that there must be some harm to the accused from the error. Tex. Code 
Crim. Proc. Ann. art. 36.19 (Vernon 2006); see Abdnor, 871 S.W.2d at 731-32;
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "A
defendant must have suffered 'some' actual, rather than theoretical harm from the
error." Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (citing Almanza,
686 S.W.2d at 171).

 A person commits the offense of aggravated assault if the person commits
assault as defined in section 22.01 of the Texas Penal Code (2) and the person (1) causes
serious bodily injury to another, including the person's spouse, or (2) uses or exhibits
a deadly weapon during the commission of the assault. See Tex. Pen. Code Ann. §
22.02(a)(1)-(2). 

B. Error

 Appellant contends that his right to an unanimous jury verdict was violated
because the jury was permitted to return a general verdict of guilty "without
unanimously finding the State proved all elements of the two offenses they [sic]
charged him with."

 The application paragraph of the charge instructed the jury as follows,

 Now, if you find from the evidence beyond a reasonable
doubt that on or about the 19th day of December, 2003, in
Harris County, Texas, the defendant, Carlos Landrian did
then and there unlawfully, intentionally or knowingly cause
bodily injury to Luis Brizuela by using a deadly weapon,
namely, a bottle as alleged in Paragraph 1 of the
indictment; or


 If you find from the evidence beyond a reasonable doubt
that on or about the 19th day of December, 2003, in Harris
County, Texas the defendant, Carlos Landrian, did then
and there unlawfully, recklessly cause serious bodily injury
to Luis Brizuela by throwing a bottle in the direction of
Luis Brizuela as alleged in Paragraph 2 of the indictment,
then you will find the defendant guilty as charged in the
indictment. 

 The State argues that Kitchens v. State and Martinez v. State are controlling. 
See Kitchens v. State, 823 S.W.2d 256 (Tex. Crim. App. 1991); Martinez v. State, 129
S.W.3d 101 (Tex. Crim. App. 2004). In both Kitchens and Martinez, the defendants
were disjunctively charged with one offense of capital murder. Kitchens, 823 S.W.2d
at 258; Martinez, 129 S.W.3d at 103. The charge's disjunctive nature was not error
because the disjoined paragraphs merely contained different means of committing this
one offense and were in the same subsection of the statute. See Tex. Pen. Code.
Ann. § 19.03(a)(2) (Vernon Supp. 2006) ("A person commits an offense if he
commits murder as defined under Section 19.02(b)(1) and the person commits the
murder in the course of committing or attempting to commit kidnapping, burglary,
robbery, aggravated sexual assault, arson, or obstruction or retaliation."); see also
Kitchens, 823 S.W.2d at 258 (charging murder in course of committing robbery or
aggravated sexual assault); Martinez, 129 S.W.2d at 103 (charging murder in course
of committing robbery or aggravated sexual assault). In the present case, appellant
was disjunctively charged with aggravating factors that appear in different
subsections of the aggravated-assault statute. See Vick v. State, 991 S.W.2d 830, 833
(Tex. Crim. App. 1999) (finding four different aggravated sexual assault offenses in
Section 22.02 because "or" is used to "distinguish and separate different conduct");
Gonzales v. State, 191 S.W.3d 741, 747-48 (Tex. App.--Waco, 2006, pet. ref'd)
(finding three separate aggravated-assault offenses for same reasons). Kitchens and 
Martinez thus do not control.

 The State also relies on Ngo and Francis, arguing that this is not a case in
which there were different acts committed at different times. See Ngo v. State, 175
S.W.3d 738 (Tex. Crim. App. 2005); Francis v. State, 36 S.W.3d 121 (Tex. Crim.
App. 2000); see also Stuhler, 218 S.W.3d at 716-17. The State contends that a single
criminal act was committed in this case. The State misses the significance of Stuhler,
which is controlling under the facts here. The Court of Criminal Appeals held in
Stuhler that the defendant was denied her right to an unanimous jury verdict when the
application paragraph of the jury charge authorized the jury to convict her upon a
finding either that she had caused serious bodily injury or serious mental deficiency
to a child, i.e., the charge did not required a unanimous verdict on the type of injury
caused. See Stuhler, 191 S.W.3d at 717-18; Tex. Pen. Code Ann. § 22.04(a)(1)-(2)
(Vernon Supp. 2006) (stating in subsection (1) that an offense is committed by
causing serious bodily injury and stating in subsection (2) that another offense is
committed by causing serious mental deficiency, impairment, or injury). 

 The Stuhler court looked to the Legislature's intent to determine whether the
jury charge should have required an unanimous verdict on whether the defendant
caused serious mental deficiency, impairment, or injury. Stuhler, 218 S.W.3d at 718
(citing Jefferson v. State, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006) (noting that,
like United States Supreme Court, we decide what level of specificity is required in
jury verdict to satisfy requirement of jury unanimity as function, at least in first
instance, of statutory construction, citing Richardson v. United States, 526 U.S. 813,
817-18, 119 S. Ct. 1707, 1710 (1999)). In sum, the court concluded that "the
Legislature intended the separate results spelled out in the various subsections of the
statute to be elemental and thus required jury unanimity." Id. 218 S.W.3d at 719. 

 The Stuhler court explained its rationale as follows:

 [W]e must return to eighth-grade grammar to determine
what elements the jury must unanimously find beyond a
reasonable doubt. At a minimum, these are: the subject (the
defendant); the main verb; and the direct object if the main
verb requires a direct object (i.e., the offense is a result
oriented crime). . . . Generally, adverbial phrases,
introduced by the preposition "by," describe the manner
and means of committing the offense. They are not the
gravamen of the offense, nor elements on which the jury
must be unanimous.


Stuhler, 218 S.W.3d at 718 (quoting Jefferson v. State, 189 S.W.3d 305, 315-16
(Cochran, J., concurring)). (3) 

 The Waco Court of Appeals has held recently that there are at least three
separate and distinct offenses of aggravated assault: 


 Intentionally, knowingly, or recklessly causing serious bodily
injury to another. See Tex. Pen. Code Ann. §§ 22.01(a)(1),
22.02(a)(1).

 Intentionally, knowingly, or recklessly causing bodily injury to another
and using or exhibiting a deadly weapon during the commission of the
assault. See id. §§ 22.01(a)(1), 22.02(a)(2).




 Intentionally or knowingly threatening another with imminent
bodily injury and using or exhibiting a deadly weapon during the
commission of the assault. See id. §§ 22.01(a)(2), 22.02(a)(2).


 

Gonzales v. State, 191 S.W.3d at 747-48. We agree. The first aggravated-assault
offense set out in Gonzales involves a defendant (subject) who causes (verb) serious
bodily injury (direct object). See Tex. Pen. Code Ann. §§ 22.01(a)(1), 22.02(a)(1). 
The second aggravated-assault offense involves a defendant (subject) who causes
(verb) bodily injury (direct object). See id. §§ 22.01(a)(1), 22.02(a)(2). The third
aggravated-assault offense involves a defendant (subject) who threatens (verb) bodily
injury (direct object). See id. §§ 22.01(a)(2), 22.02(a)(2). Under the Stuhler analysis,
the first and second offenses have different direct objects (serious bodily injury and
bodily injury). Also, the second and third offenses have different verbs (causes and
threatens). Finally, the first and third offenses have different direct objects (serious
bodily injury and bodily injury). Under Stuhler, such differences constitute different
offenses. See Stuhler, 218 S.W.3d at 718. Therefore, the Gonzales court's holding
that section 22.02 (proscribing aggravated assault) contains at least three separate
offenses is confirmed by Stuhler.

 Here, the jury charge presented two types of aggravated assault without
requiring the jury to determine unanimously whether appellant caused serious bodily
injury as alleged in paragraph one or whether appellant caused bodily injury as
alleged in paragraph two. See Tex. Pen. Code Ann. § 22.02(a)(1)-(2). The subject
(appellant) and the main verb (cause) were the same in both offenses. However, the
direct objects of both offenses were different ("serious bodily injury" and "bodily
injury"). See id. § 22.02(a)(1)-(2). 

 The State asserts that the respective aggravating factors (serious bodily injury
and use of a deadly weapon) were merely different modes of committing the same
offense of aggravated assault, which is the offense of simple assault aggravated by
one of two aggravating factors. The State's analysis fails to take account of the three
different ways that assault can be committed. In particular, the conduct engaged in
(i.e., the verb) can be either "causing" or "threatening." Although the verb used in
the application paragraphs here was the same, once the aggravating factor of serious
bodily injury replaced bodily injury in one of the allegations of aggravated assault,
a difference was created in the direct object (bodily injury versus serious bodily
injury). (4)

 We hold, in accord with Stuhler, that the trial court erred in submitting a jury
charge without requiring the jury unanimously to agree that appellant either
intentionally and knowingly caused bodily injury or recklessly caused serious bodily
injury.

C. Harm

 In examining the record to determine whether jury-charge error is harmful, the
reviewing court should consider the entirety of the jury charge itself; the evidence,
including the contested issues and weight of the probative evidence; the arguments
of counsel; and any other relevant information revealed by the record of the trial as
a whole. Ngo, 175 S.W.3d at 750 n.48; Bailey v. State, 867 S.W.2d 42, 43 (Tex.
Crim. App. 1993); Almanza, 686 S.W.2d at 171. Because appellant objected to the
trial court's charge for not requiring an unanimous verdict as to each paragraph
alleged, we determine whether there was any actual harm. See Almanza, 686 S.W.2d
at 171. 

 1. The Charge Itself

 The charge's instructions on self-defense and transferred intent were applied
only to the first paragraph of the indictment. The charge allowed the jury to find
appellant guilty if it found that he intended to hit Miguel with the bottle, but hit
complainant instead. Further, the charge allowed the jury to find appellant not guilty
if it found that appellant intentionally attempted to hit Miguel in self-defense, but hit
complainant instead. Of course, the main application paragraph allowed the jury to
find appellant guilty if he committed either the offense as alleged in the first
paragraph of the indictment or as alleged in the second paragraph of the indictment. 
 Therefore, the charge offered three different theories that applied to the offense
alleged: two theories applied to the offense in the first paragraph (intentionally or
knowingly causing bodily injury), and only one theory applied the offense alleged in
the second paragraph (recklessly causing serious bodily injury).

 

 2. The Evidence

 The State presented several witnesses who testified that appellant intentionally
or knowingly threw the bottle at either complainant or Miguel. Complainant testified
that appellant threw an unbroken beer bottle at him. Martinez testified that appellant
broke a beer bottle on the floor and threw it at complainant. In addition, Martinez
testified that appellant threw the bottle at Miguel, but missed and hit complainant. 
Two Houston Police Department officers testified that complainant had originally
said that appellant had hit him (complainant) with the bottle, but that appellant had
attempted to throw the bottle at Miguel. Appellant and his witnesses testified that he
had hit Miguel with the bottle in self-defense. Appellant's version of the events adds
to the State's theory of intentional conduct when coupled with the theory of
transferred intent because appellant's intent to hit Miguel transfers to intent to hit
complainant. See Tex. Pen. Code Ann. § 6.04(b)(1). 

 In contrast, the State presented only one witness, Salazar, to prove that
appellant "recklessly" caused complainant's injury. She testified that appellant had
broken the beer bottle on a wall, then threw the bottle in the air, not aiming at anyone.
 3. Arguments

 The jury was instructed by the prosecutor during closing arguments that the
jury need not reach a unanimous verdict. The prosecutor told the jury: 

 And the law says that you don't have to agree on which
one it was. In other words, let's say eight of you say,
"Okay. Yeah, he meant to hit this guy, slipped out of his
hand hit the other guy." [objection omitted]. . . . And let's
say four of you say, "I don't think he was trying to hit the
guy on the ground. I think he was just angry, wanting to
show he was tough and threw the bottle recklessly and
happened to hit this guy and we think he's guilty under the
second paragraph." You don't have to sit back there and
fight over which one it is as long as 12 of you agree that
he's guilty of aggravated assault by either Paragraph 1 or
Paragraph 2. 

 4. Other Relevant Information

 The trial court also had instructed the jury that a unanimous verdict was not
necessary. During voir dire, the trial court told the jurors:

 Now, because there are two alternative pleading paragraphs
that gives the jury options, meaning basically, if you go
back in the jury room in the Court's Charge, you have the
option of finding the person guilty on either one. In fact,
it doesn't have to be unanimous. You might . . . have six
people decide threat [sic] with a deadly weapon. That's
what they believe beyond a reasonable doubt. You might
have six people believe its recklessly causing serious
bodily injury. So you don't have to agree.


(Emphasis added.)

 In one of 11 notes sent to the trial court, the jury asked: "In determining guilt
or innocence, do we need to make a determination beyond a reasonable doubt as to
whether or not we agree with the prosecution's witnesses testimony as to in what
manner the bottle was thrown?" (Emphasis added.) The court responded, "Read the
charge and continue to deliberate." 

 The jury told the trial court that it was hopelessly deadlocked, and the court
responded by issuing an Allen (5) charge. After approximately eight hours of
deliberating, the jury convicted appellant of aggravated assault.

 5. Resolution

 Similar to that in Stuhler, the evidence here weighed heavily on one side in a
case in which the State relied on different evidence to prove two different theories.
The trial court failed to require the jury to decide unanimously whether appellant (1)
acted intentionally or knowingly or (2) acted recklessly. See Stuhler, 218 S.W.3d at
719 (finding egregious harm when twice as much evidence for one offense exists
than the other). Although the Stuhler court held the evidence for one theory to be
insufficient, the insufficiency of the evidence was not the controlling factor in the
court's discussion of harm. The Stuhler court discussed the difference in the amount
of evidence proving one theory vis-a-vis the amount of evidence proving the other. 
Id. (stating testimony regarding serious bodily injury ran more than twice as long in
record than testimony regarding serious mental injury); see also Stuhler v. State, NO.
2-04-208-CR, 2005 WL 2402686, at *3 (Tex. App.--Fort Worth Sept. 29, 2005),
aff'd 218 S.W.3d 706 (Tex. Crim. App. 2007) (holding that harm was not created by
insufficiency of evidence for one offense, but, rather, insufficiency only
"exacerbated" harm.).

 In addition, the jury charge weighed more heavily toward the first paragraph
of the application paragraph on aggravated assault because transferred intent and self-defense are theories that assume that appellant was acting intentionally or knowingly. 
Thus, including the application paragraphs, there were three portions of the jury
charge dedicated to appellant's intentionally and knowing causing injury, while only
one portion contained the reckless theory. Far greater emphasis in the jury charge,
analogously to far greater emphasis on one theory in the evidence, weighs toward
finding some harm here.

 The error in the jury charge was further compounded by both the trial court's
in voir dire and the prosecutor's in argument instructing the jury that it did not have
to unanimously find appellant guilty under either one paragraph of the other. See
Ngo, 175 S.W.3d at 750-51 (stating that it is harmful error for State to instruct venire
panel that it is not required to return unanimous verdict when separate offenses are
alleged). 

 Finally, that the jury did appear to be led astray by the error is demonstrated by
the jury note asking whether the jury had to find unanimously in what manner the
bottle was thrown. Once again, this fact weighs toward a finding of some harm. If the similarly unbalanced state of the evidence in Stuhler led that court to find
egregious harm, then a fortiori this Court must find at least some actual harm here,
when not only is the state of the evidence extremely unbalanced, but the jury
instructions are similarly unbalanced, the trial court and prosecutor emphasized the
error, and the jurors sent out a note demonstrating confusion about whether they had
to agree on the manner in which the bottle was thrown. In other words, an analysis
of all the Almanza harm factors, the charge, the weight of the evidence, the arguments
of counsel, and other relevant information in the record, show that all factors weigh
toward finding some actual harm.

 Accordingly, we sustain appellant's first issue. 


Conclusion We reverse the judgment and remand the cause. (6)

 

 


 Tim Taft

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Publish. See Tex. R. App. P. 47.2(b).
1. We address this part of appellant's sixth issue first because it could afford
appellant the greatest relief. If "the evidence is legally insufficient to establish
the elements of the offense, appellant is acquitted and may not be retried for
the offense." Cleveland v. State, 177 S.W.3d 374, 387 (Tex. App.--Houston
[1st Dist.] 2005, pet. ref'd) (citing Clewis v. State, 922 S.W.2d at 126, 131(Tex.
Crim. App. 1996)).
2. A person commits assault if the person: (1) intentionally, knowingly, or
recklessly causes bodily injury to another, including the person's spouse; (2)
intentionally or knowingly threatens another with imminent bodily injury,
including the person's spouse; or (3) intentionally or knowingly causes
physical contact with another when the person knows or should reasonably
believe that the other will regard the contact as offensive or provocative
. See
Tex. Pen. Code. Ann. § 22.01(a) (Vernon Supp. 2006).
3. Calling it a "general rule of thumb," Stuhler applied the eighth-grade-grammar
approach. That approach, however, fails to account for the culpable metal
state, which is what, in many instances, separates same or similar facts into
different offenses. We note that in appellant's supplemental brief, which we
requested by order dated July 3, 2007 in order to have briefing on the impact
of Stuhler, appellant asserts an element-test approach based on the Texas Penal
Code's requirements of (1) the forbidden conduct; (2) the required culpability;
and (3) any required result. See Tex. Pen. Code Ann. § 1.07(22) (Vernon
Supp. 2006). 
4. If an element test were used, a second difference in the allegations would be
the culpable mental state (recklessly versus intentionally and knowingly). 
5. Allen v. United States, 164 U.S. 492, 17 S. Ct. 154 (1896). An Allen charge,
or dynamite charge, is designed to encourage the jury to arrive at a verdict
without doing damage to the consciences of the jurors.
6. Having sustained appellant's first issue, it is unnecessary to address issues two
(challenging the denial of the request to re-open the evidence), three
(challenging the denial of the motion for new trial), four (challenging other
errors in the charge), five (challenging the Allen dynamite charge), and that
portion of six challenging factual sufficiency of the evidence because relief on
any of those issues would be the same as we are giving by sustaining
appellant's first issue.